IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| SATNAM LODGING, L.L.C., | ) Case No. 13-40100 |
| | ) |
| Debtor. | ) |

## AMENDED ORDER DIRECTING DEBTOR'S BANKRUPTCY COUNSEL TO DISGORGE FEES

On January 10, 2013, attorney Lydia Carson filed the above-captioned voluntary Chapter 11 Petition on behalf of Debtor Satnam Lodging, L.L.C., which operates a Country Hearth Inn hotel in Kansas City, Missouri. On May 14, 2013, this Court entered an Order requiring Ms. Carson to disgorge, within 14 days, the sum of $5,000, representing the amount of fees she had disclosed she had been paid at that point. Thereafter, the United States Trustee filed a subsequent Motion to Disgorge Fees because the UST had learned that Ms. Carson had received fees in addition to the $5,000 previously disclosed. For the reasons that follow, Ms. Carson is ORDERED, within 14 days, to disgorge the sum of $16,033.

By way of background, Ms. Carson filed a prior Chapter 11 case on behalf of the Debtor on June 26, 2012.[1] In that case, Ms. Carson represented, in the Disclosure of Compensation, the Statement of Financial Affairs, the Application for Employment, and Ms. Carson's accompanying Affidavit, that the Debtor had paid her a $3,000

---

1 Case No. 12-42607.

retainer prior to the filing of the case. That Application also stated that on the filing date, June 26, 2012, "the firm sent its first statement covering the initial research and preparation of the petition and schedules amounting to $5,185.00 consisting of 21 hours of paralegal time and 17 hours of attorney time." However, the Application did not state whether Carson was paid the $5,185. The accompanying affidavit was also silent on that question. This Court granted the Application to Employ Ms. Carson. Ms. Carson never filed a fee application in that case, nor did she file any amendments or supplements to her disclosure of compensation, employment application or affidavit.

Ashton DeVan Pardue, an attorney with offices in Louisiana, filed a Motion to Appear *Pro Hac Vice* on behalf of the Debtor in the 2012 case, which Motion was granted.

That case was dismissed on December 4, 2012, on the Debtor's motion.[2]

In the present case filed five weeks later on January 10, 2013, in the Disclosure of Compensation of Attorneys for Debtor filed with the Petition, Ms. Carson certified that she had agreed to accept $0.00 for legal services, and that she had been paid $0.00 prior to filing. She also represented that $0.00 of the filing fee had been paid.

---

2 The U.S. Trustee and Zion's First National Bank also had Motions to Dismiss or Convert pending in the first case.

Similarly, the Statement of Financial Affairs listed no payments made to any entity for consultation concerning relief under the bankruptcy law or preparation of the petition in bankruptcy within one year immediately preceding the commencement of the case.[3] In the Debtor's Application to Employ Ms. Carson as counsel, filed on January 13, 2013, the Debtor represented that Ms. Carson's law firm had "not received a retainer in this matter."[4] This Court approved the Application to Employ on February 11, 2013.

At a telephone hearing held on March 15, 2013 in the present case, Ms. Carson stated that Mr. Pardue was an attorney of record in the case, although he had not filed an appearance, Motion to Appear *Pro Hac Vice*, or Application to Employ in this case. Ms. Carson also stated that she was waiving any claim to fees from the prior case so that she would not be a creditor in this case. Mr. Pardue did not participate in the telephone conference, but Ms. Carson said she thought Mr. Pardue expected to receive payment from a settlement in other litigation, and she did not believe he had been paid anything in connection with the filing of this case. In addition to raising several other concerns in the case, the U.S. Trustee and counsel for the largest creditor in the case, Zion's First National Bank, raised concerns about possible transfers of money from

---

3 *Statement of Financial Affairs* (Doc. #1) at ¶ 9.

4 Doc. #8 at ¶ 9.

the Debtor to affiliate companies which are also in bankruptcy elsewhere in the country, as well as Mr. Pardue's possible representation of those affiliates while also representing the Debtor here.

Following that hearing, this Court ordered Ms. Carson and Mr. Pardue to file, within 14 days, applications to be employed as counsel, disclosures of compensation, and verified Rule 2014 statements showing counsel's connections to the Debtor, its affiliates, and other interested parties.[5]

Neither attorney complied with that Order, so on April 1, 2013, this Court entered an Order to Show Cause to Ms. Carson and Mr. Purdue, as follows:

> Order of the Court, Debtor has failed in all respects to comply with the Order of March 15, 2013 (Doc.#49). Therefore, within 14 days, Ms. Carson and Mr. Pardue are ordered to SHOW CAUSE why the case should not be dismissed, and why they should not be required to disgorge any fees paid to them for failure to submit the required applications to employ and supporting affidavits at the outset of the case. As part of their responses, Mr. Pardue should submit a completed Form 203, and Ms. Carson should submit an amended Form 203, if she has received any fees in the case. In the event the Court dismisses the case, it will retain jurisdiction to rule on whether any fees received should be disgorged. IT IS SO ORDERED.

Prior to the deadline under the Show Cause Order, at a telephone hearing on an unrelated issue held on April 9, 2013, Ms. Carson revealed that she had been paid

---

[5] Doc. #49. Federal Rule of Bankruptcy Procedure 2014 sets forth the requirements for professional persons being employed by a debtor.

4

$5,000, and said she thought she had previously disclosed that. The Court reminded her that she needed to amend her Disclosure of Compensation in which she said she had been paid zero, and that she and Mr. Pardue needed to comply with the Show Cause Order before the deadline to do so, or their fees would be ordered disgorged.

On April 14, 2013, Ms. Carson filed a Response to the Order to Show Cause, as well as Disclosure of Compensation forms for herself and Mr. Pardue. Based on the response for Mr. Pardue, I vacated the Order to Show Cause as to him.

As to Ms. Carson's compensation, her Amended Disclosure of Compensation showed she received $5,000 in connection with the filing of the case, and that "$1,213.00 of filing fee has been paid."[6] She identified the source of the compensation already paid, and to be paid in the future, as "Dee Mann Personally, not through debtor corporation."[7] The Response to the Order to Show Cause stated as to her fee: "Debtor's counsel did not receive funds from Debtor, but a third party. Therefore Debtor's counsel believed it was appropriate to file the form 203a as zero. Debtor has amended the form 203a, but continues to state that Debtor did not pay such

---

[6] Doc. # 56.

[7] *Id.* Presumably, the reference to "Dee Mann" is to Daljeet Mann, who is one of the Debtor's owners and the member who signed the Petition on behalf of the Debtor.

fees."[8]

In the May 14, 2013 Order Directing [Ms. Carson] to Disgorge Fees, I held that, based on the above-described nondisclosures, which I found to be intentional, Ms. Carson violated § 329 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 2016, and Local Rule 2016-1. I ordered her to disgorge, within 14 days, the $5,000 she had disclosed by that point she had been paid. I also set a hearing to determine whether Ms. Carson was disqualified as counsel in this case, due to the fact that the source of her fee was the Debtor's principal.

On May 21, 2013, new counsel filed an Application to be employed as Debtor's counsel. The Debtor is now being represented by Bradley D. McCormack.

On June 7, 2013, the United States Trustee filed the instant Motion to Disgorge All Fees from Lydia Carson. In it, the UST states that an affiliate of the Debtor here, JDS Hospitality, L.L.C., filed a Chapter 11 case in this Court's southwestern division on March 13, 2013. JDS is represented by James M. Poe. Through Mr. Poe, the UST was able to obtain an accounting from the Debtor's principals of all fees paid to Carson from the Debtor or any of its owners or affiliates. That accounting revealed the following payments to Carson:

---

8 Doc. #58 at ¶ 2.b.

| 6/22/12 | from Satnam Lodging, LLC (the Debtor here) | $4,039 |
| 7/10/12 | from Akaal Lodging, LLC | $5,650 |
| 10/18/12 | from Southern Host Lodging, LLC | $5,096 |
| 01/9/13 | from Southern Host Lodging, LLC | $6,500 |
| 02/10/13 | from Guru Lodging LLC | $10,000 |
| | Total | $31,285 |

Akaal Lodging, LLC, Southern Host Lodging, LLC, and Guru Lodging, LLC, are affiliates of the Debtor. The Debtor's Statement of Financial Affairs in this case shows transfers to certain of the Debtor's affiliates within 90 days prior to the commencement of this case, including a transfer to Southern Host Lodging, LLC.

Significantly, Ms. Carson never filed an application under § 330 to authorize the payment of fees in either the 2012 case or the present one. The UST now seeks disgorgement of all of the fees paid to Ms. Carson in both cases.

To reiterate what I said in the May 14 Order requiring Ms. Carson to disgorge the $5,000, in order to be employed as counsel in this Chapter 11 bankruptcy case, Ms. Carson must not hold or represent an interest adverse to the estate, and must be a disinterested person pursuant to § 327(a) of the Bankruptcy Code:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants,

7

appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.[9]

This provision sets forth a two-part test to determine whether an attorney may act as counsel for debtor: First, the professional must not "hold or represent any interest adverse to the estate." Second, the professional must be a "disinterested person" as defined by § 101(14).[10] "Although framed conjunctively, the conditions are applied disjunctively; failure to meet either will result in disqualification."[11]

Courts have defined "adverse interest" as: (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or possession of a predisposition under circumstances that create a bias against the estate.[12]

As relevant here, a "disinterested" person is defined in the Bankruptcy Code as one who "does not have an interest materially adverse to the interest of the estate . . .

---

[9] 11 U.S.C. § 327(a).

[10] *Id.*; *In re Pierce*, 809 F.2d 1356, 1361 (8th Cir. 1987).

[11] *Pierce,* 809 F.2d at 1361.

[12] *Electro-Wire Prod., Inc., v Sirote & Permute, P.C.* (*In re Prince*), 40 F.3d 356, 361 (11th Cir. 1994).

8

by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . or for any other reason."[13]

In order for the Court to make the determination required under § 327(a), the Court must be fully informed of all actual or potential conflicts of interest.[14] Rule 2014(a) requires the professional to file an application disclosing "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any party in interest, their respective attorneys and accountants, the United States trustee, or any person employed by the office of the United States trustee." The application must be filed along with a verified statement setting forth "the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."[15]

The requirements of § 327(a) are mandatory and cannot be waived.[16]

Ms. Carson stated in her response to the Order to Show Cause, and again at a hearing held on July 1, 2013, that she believed that the Debtor's principal, Daljeet

---

13 11 U.S.C. § 101(14)(C).

14 *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844 (B.A.P. 10th Cir. 1997).

15 Fed. R. Bankr.P. 2014(a).

16 *In re American Energy Trading, Inc.* 291 B.R. 154, 158 (Bankr. W.D. Mo. 2003).

Mann, was the source of the fees paid to her. The accounting above shows that the fees likely came from affiliates. In any event, Ms. Carson maintains that she was not required to disclose the fees she received because they came from a source other than the Debtor.

While accepting payment from a third party such as an equity-owner does not disqualify counsel *per se*, pursuant to § 327(a), this Court is required to determine, based on the facts of the case, whether accepting payment from the third party means that counsel holds or represents an interest adverse to the estate or is in some way not disinterested.[17] In analyzing those facts, courts look to factors including: (1) whether there was any specific advantage to the third party; (2) whether there was any injury to the estate; (3) whether there was prejudice to other creditors; and (4) whether an actual conflict arising from the payment is apparent.[18] If the Court finds that payment from an insider does not disqualify counsel under the facts of a particular case, such payment should generally be treated as a capital contribution by the insider to the debtor-corporation; otherwise, the source of the fee would be a creditor of the debtor.[19]

---

17 *In re Missouri Mining, Inc.*, 186 B.R. 946, 948 (Bankr. W.D. Mo. 1995).

18 *Id.* at 949.

19 *Id.* at 950.

As I stated previously, it is the nondisclosure that is so troubling here. Section 329(a) of the Bankruptcy Code provides:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, *and the source of such compensation.*[20]

Further, Federal Rule of Bankruptcy Procedure 2016(b) provides:

> **(b) Disclosure of compensation paid or promised to attorney for debtor**. Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.[21]

Finally, Local Rule 2016-1 provides:

> **A. Prepetition Retainers and Other Payments.** 11 USC §§ 329 and 330 and Fed. R. Bankr. P. 2016 and 2017 require or authorize the court

---

20  11 U.S.C. § 329(a) (emphasis added)

21  Fed. R. Bankr. P. 2016(b).

11

to review and approve the compensation and expenses of attorneys in bankruptcy proceedings. Therefore, certain disclosures and applications are required. Pursuant to § 329 and Fed. R. Bankr. P. 2016(b), *the attorney for the debtor shall file with the petition a disclosure of the amount and source of all retainers received by the attorney*. The disclosure shall be served on the United States Trustee and any case trustee. Unless excused pursuant to the provisions of subpart D of this Rule, *all professionals shall: (1) deposit all retainers (with the exception of earned on receipt retainers), whether received from the debtor or any other source, in the attorney's trust account pending an order of the court*; and (2) with respect to all retainers and other payments made or fees sought, *file an application seeking approval of such retainers, payments, and fees pursuant to § 330 and Fed. R. Bankr. P. 2016(a)* (in the case of Chapter 11, 12, and 13 proceedings), or file an application to facilitate the court's review of the reasonableness of such retainers, payments, and fees pursuant to § 329 and Fed. R. Bankr. P. 2017 (in the case of Chapter 7 proceedings). Until the case is closed by final decree, debtor's attorney is under a duty to disclose all subsequent payments by filing a supplemental statement as required by Fed. R. Bankr. P. 2016(b).[22]

The Bankruptcy Appellate Panel for the Eighth Circuit has summarized these provisions as follows:

> When an attorney files a bankruptcy case on behalf of a debtor, section 329 requires the attorney to submit a specific statement of the compensation paid or agreed to be paid for the services already rendered or to be rendered in connection with the case or, for that matter, merely in "contemplation" of the case. The statement, filed pursuant to the guidelines established by Rule 2016 and, in this instance, further delineated by local rule, must be filed *whether or not the attorney applies for the compensation to be paid from property of the estate and*

---

[22] Local Rules of Practice for the United States Bankruptcy Court for the Western District of Missouri 2016(a) (emphasis added).

*whether or not the attorney is in fact paid from property of the estate. The Code and Rules require, without exception, that the amount and source of the compensation be disclosed.*[23]

"It is well settled that disgorgement of fees is an appropriate sanction for failure to comply with the disclosure requirements of section 329 and Rule 2016," and "ignorance of the rules governing professional compensation, as well as local rules, militates in favor of a determination that disgorgement is appropriate."[24]

As to the 2012 case, Ms. Carson did disclose that she had received a $3,000 retainer. Although off by a few dollars, the $4,039 payment from the Debtor on the day prior to the 2012 filing appears to represent that retainer plus the filing fee of $1,046. Ms. Carson has since provided evidence that she did, in fact, pay the filing fee, plus a $100 fee on another pleading in the case. Although Ms. Carson never filed a fee application in that case, she did disclose that she had received $4,039 prior to the filing of the case. Therefore, she will not be ordered to disgorge the initial payment of $4,039.

However, Ms. Carson wholly failed to disclose the receipt of the $5,650 on July 10, 2012 and the $5,096 on October 18, 2012. At the hearing held on July 1, 2013, Ms. Carson stated that she believed that she used the $5,096 she had received to pay

---

[23] *In re Redding*, 263 B.R. 874, 878 (B.A.P. 8th Cir. 2001) (citations omitted; emphasis added).

13

outstanding U.S. Trustee fees on behalf of the Debtor. She was given an opportunity after that hearing to provide evidence of such payment, which she has been unable to do. Ms. Carson will, therefore, be ordered to disgorge both the $5,650 and $5,096 payments, for a total of $10,746 in the 2012 case.

In this 2013 case, I have previously ordered that Ms. Carson disgorge the $5,000 she finally revealed she had received. As it turned out, she actually received $6,500 on the day before this case was filed. She now asserts that amount included the filing fee which, in this case, was $1,213. Because Ms. Carson did not receive any benefit from the $1,213 she paid for the filing fee, she will not be ordered to disgorge that amount. However, for the same reasons stated in my prior Order, she will be ordered to disgorge the balance of the $6,500 payment in the 2013 case, or $5,287.

Finally, Ms. Carson received a payment of $10,000 on February 10, 2013, while this case was pending. Ms. Carson stated at the hearing held on July 1, 2013 that this payment was for legal services provided in an affiliate case pending in Louisiana, namely, GS Hospitality, LLC.[25] Ms. Carson stated at the hearing that the Court in Louisiana had approved her employment as counsel in that case and that the $10,000 fee had also been approved there. A review of that Court's docket shows that an

---

24 *In re Redding*, 263 B.R. at 880, 879 n. 6 (citations omitted).
25 *In re GS Hospitality, LLC*, Case No. 13-10393, pending in the United States Bankruptcy Court for the Western District of Louisiana, Shreveport Division.

14

Order Authorizing Retention of Attorney has been entered in that case as to Ms. Carson,[26] although her underlying motion fails to disclose her representation of the Debtor in this case.[27] I found nothing in the Louisiana Court's record disclosing the $10,000 payment to her, or authorizing it. While those apparent omissions in the Louisiana case underscore the egregiousness of the nondisclosures in this case, if disgorgement of those fees is warranted, such a determination is best left to the Court in Louisiana, particularly since such fees would be an asset of that estate.

As I said previously, not only did Ms. Carson fail to disclose that she had received the majority of the fees discussed above, the documents filed early in this case, most notably the Application to Employ, made affirmative statements that she had not received a retainer. Indeed, Ms. Carson's Response to the Order to Show Cause conceded that the lack of disclosure was intentional, based on her contention that disclosure was not necessary since the funds were from a source other than the Debtor. However, the fact that the source of the funds might have caused Ms. Carson's disqualification only compounds the seriousness of the lack of disclosure. In addition, at the hearing held on July 1, 2013, Ms. Carson said that even though she knew that the Debtor here and the debtor in Louisiana have common ownership and

---

26 Doc. #104.

27 Doc. #41.

are affiliates, she decided not to disclose the $10,000 fee, or her representation of the affiliate in Louisiana, because she determined it was a different entity in a different jurisdiction. As I stated at the hearing, however, it is not up to the attorney to decide whether a particular relationship is disqualifying – that is why disclosure is so important.

Based on the foregoing, the Court finds that Ms. Carson failed to comply with the disclosure requirements of § 329, Rules 2014 and 2016, and Local Rule 2016-1. The Court further finds that disgorgement of fees paid in both cases is an appropriate sanction for such failure, particularly considering Ms. Carson's response that the lack of disclosure was intentional due to the source of the fees, and her continued failure to fully disclose her compensation, even after she had been ordered to disgorge the first $5,000. In sum, based on her intentional misrepresentations to the Court concerning her compensation, Ms. Carson will be ordered to disgorge $10,746 from the 2012 case, plus $5,287 from the 2013 case, for a total of $16,033.

ACCORDINGLY, Lydia Carson is ORDERED to disgorge and pay into the trust account of Debtor's current counsel, Bradley McCormack, the sum of $16,033 within 14 days. Mr. McCormack is ORDERED to hold such funds in trust pending a determination as to who may be entitled to them, and to certify to the Court whether they are received as ordered herein.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 7/16/2013